IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON BREWER, | ) | CASE NO. 5:09-CV-3023 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Sharon Brewer's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court REVERSES the decision of the Commissioner and orders that the case be REMANDED for further proceedings not inconsistent with this decision.

### I. INTRODUCTION & PROCEDURAL HISTORY

On November 4, 2005, Sharon Brewer ("Plaintiff" or "Brewer") protectively filed an application for Supplemental Security Income benefits alleging that she became disabled on October 27, 2004, due to back problems and depression (Tr. 104-06, 118). Plaintiff's application was denied initially and upon reconsideration (Tr. 39-40, 55-57, 59-61). Plaintiff timely requested and was granted an administrative hearing (Tr. 54, 62-63). On March 10, 2009, Plaintiff appeared with

1

counsel and testified at a hearing held via video conference before Administrative Law Judge Hugh Atkins (the "ALJ" or "ALJ Atkins") (Tr. 7-38 ). Brewer appeared in Mansfield, Ohio and the ALJ presided over the proceeding from Providence, Rhode Island (Tr. 44). Medical expert, Dr. Stephen Kaplan (the "ME") also testified at the hearing (Tr. 21-38).

The ALJ issued an unfavorable written decision on June 29, 2009, in which he found at Step Five of the five-step sequential evaluation[1] that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work and therefore, was not disabled (Tr. 44-53). Plaintiff requested review of the ALJ's decision from the Appeals Council. On November 6, 2009, the Appeals Council denied Plaintiff's request, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 1-3). Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Plaintiff was forty-three years old at the time of she applied for benefits (Tr. 52). Brewer has past experience working as a cleaner, cleaning businesses, and as a packer for a plastics manufacturing business (Tr. 119).

## II. SUMMARY OF MEDICAL HISTORY

The parties provided a detailed history of Plaintiff's medical history in their briefs (Doc. 15 & 17). Brewer has a long-standing history of back problems associated with her lumbar spine. She was previously determined to be disabled and was receiving Social Security benefits due to this condition in 1997 (Tr. 13-16). The record demonstrates that Plaintiff has undergone several surgeries on her back (Tr. 16-18, 21-26). She also complains of problems with her neck associated with her cervical spine impairments. In June of 2007, Plaintiff underwent anterior cervical discectomy decompression fusion surgery on her cervical spine (Tr. 336-40). Following surgery, Brewer has continued to suffer from pain and other symptoms as a result of her back and neck conditions. Plaintiff's impairments have been treated with physical therapy, pain medication, and epidural injections.

## III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. **ANALYSIS**

Upon review of the record evidence, ALJ Hugh Atkins concluded that Plaintiff was not disabled under the Social Security Regulations (Tr. 44-53). At step one of the sequential evaluation process, ALJ Atkins found that Plaintiff had not engaged in substantial gainful activity since October 19, 2005 (Tr. 46). At step two, the ALJ determined that Plaintiff's degenerative lumbar disc disease

4

and degenerative cervical disc disease qualified as severe impairments (Tr. 46-47). However, at step three, the ALJ ruled that neither of these impairments, either individually or in combination, satisfied the listing requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 49-50). Before determining whether Brewer was capable of performing her past relevant work, ALJ Atkins held that Plaintiff retained the RFC to perform sedentary work with certain restrictions (Tr. 50). The ALJ stated that Brewer's work should not involve climbing ropes, ladders, or scaffolds and that it should involve no more than occasional balancing, stooping, kneeling, crouching or crawling (Tr. 50). Next, at step four, the ALJ concluded that Plaintiff could not perform her past relevant work as a cleaner or packer (Tr. 51-52). Finally, at step five, ALJ Atkins found that Brewer's RFC permitted her to perform jobs that existed in significant numbers in the national economy (Tr. 52-53).

Plaintiff challenges the ALJ's decision on two grounds. First, Brewer argues that the ALJ improperly disregarded her non-exertional impairments, by failing to employ the use of the Dictionary of Occupational Titles or vocational expert testimony during her hearing. Plaintiff maintains that her non-exertional limitations reduce her ability to perform sedentary work, and that only vocational expert testimony or the use of the Dictionary of Occupational could determine the extent to which her ability to perform sedentary work was eroded. Second, Brewer contends that ALJ Atkins improperly evaluated her complaints of disabling pain.

### A. Whether the ALJ's Use of the Medical-Vocational Guidelines was Proper

After an ALJ concludes that a claimant is unable to perform his/her past relevant work at step four of the sequential evaluation process, the burden shifts to the Commissioner to establish whether the claimant's RFC permitted him/her to perform "substantial gainful work which exists in the national economy." *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)

(*citing Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). To satisfy this burden, the Commissioner may rely upon the Medical-Vocational Guidelines ("Guidelines"), listed in 20 C.F.R. Part 404, Subpart P, Appendix 2, to establish that such jobs exist in the national economy. *Id.* However, "[b]ecause the Guidelines take into account only exertional limitations, they generally are considered to have limited application where a claimant is limited by significant non-exertional impairments". *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). Accordingly, when non-exertional limitations restrict a claimant's ability to perform the full range of work at any capacity level, those limitations must be taken into consideration, and the ALJ may not apply the Guidelines to satisfy his burden. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981). "A mere allegation of a nonexertional limitation is not sufficient to preclude application of the grid; the determining factor is whether the alleged nonexertional impairment is severe enough to alter the conclusion that the claimant could do a full range of sedentary work." *Cole*, 820 F.2d at 772. In addition, "[w]hen relying on the Guidelines, the ALJ must make specific findings with regard to the claimant's characteristics in each category and each finding must be supported by substantial evidence." *Carreon*, 51 F. App'x at 575.

The ALJ determined that Brewer could not perform her past relevant work as a cleaner or packer at step four of the sequential evaluation process. At step five, ALJ Atkins concluded that Plaintiff's RFC allowed her to perform jobs which existed in significant numbers in the national economy after applying Plaintiff's RFC, age, education, and work experience to the Guidelines (Tr. 52-53). ALJ Atkins' RFC finding expressly addressed Plaintiff's non-exertional limitations regarding her inability to climb ropes, ladders, scaffolds or do more than occasional balancing, stooping, kneeling, crouching or crawling (Tr. 50). But, Plaintiff argues that she was also plagued

6

by other non-exertional limitations, namely, pain, weakness, numbness and significant loss of range of motion in her upper extremities caused by her degenerative cervical spine impairment. Brewer argues that the ALJ's reliance upon the Guidelines was improper because the ALJ's use of the Guidelines did not account for these non-exertional impairments.

Upon review of the record, the Court finds that Plaintiff's argument is well-taken. Social Security Ruling 96-9p describes the full range of sedentary work as requiring the ability to "lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools." [SSR 96-9p](). Sedentary work also involves a certain amount of sitting, walking, standing and manipulation. Brewer asserts that the ALJ should have sought the opinion of a vocational expert to determine the extent to which Plaintiff's pain, weakness, numbness, and limited range of motion eroded her ability to perform the full range of sedentary work. The ALJ's opinion makes no mention of whether these restrictions would have reduced the number of jobs available to Brewer.

In regard to these non-exertional limitations, there is evidence in the record documenting Plaintiff's complaints of numbness and weakness. For example, in March of 2007, Dr. Dennis Davis noted that Brewer complained of pain in her shoulder which caused numbness and tingling in her fingers. He opined that Plaintiff suffered from right and left shoulder tenderness and shoulder impingement bilaterally (Tr. 441). Likewise, in November of 2008, Dr. Ayman Basali, remarked that Plaintiff experienced tingling and numbness in both her arms and legs (Tr. 357). Even the medical opinions offered by the physicians relied upon by the ALJ concede that Plaintiff suffered from numbness in her extremities (Tr. 290, 299).

A review of the record also reveals that Plaintiff's degenerative cervical and lumbar disc disease have caused her to suffer a limited range of motion in her neck and arms. Several doctors have confirmed Plaintiff's restricted range of motion. Dr. Dennis noted stiffness in Brewer's shoulders and observed that she had a restricted range of motion (Tr. 441). Plaintiff's range of motion in her cervical spine did not show improvement after she underwent surgery in June of 2007. Progress notes from the Crystal Clinic in October of 2008 indicate that Brewer's range of motion in her cervical spine "show[ed] very limited mobility w[ith] extension being 1-1/2 out of 5 and flexion at 3 out of 5[, and e]ar to shoulder [wa]s 2-1/2 out of 5 bilaterally[]" (Tr. 323). The notes further indicate that Plaintiff's cervical spine was not healing after her surgery. When Plaintiff presented to Dr. Basali in November of 2008, he also confirmed that Plaintiff suffered from a limited range of motion in her cervical spine and a marked restriction in her lumbar spine (Tr. 358). Dr. Basali diagnosed Plaintiff with shoulder joint pain and radicular syndrome in her upper extremity (Tr. 359). Additionally, the ME testified that Plaintiff's neck presented a significant problem and that it was likely Plaintiff would have some limitation in range of motion due to undergoing extensive neck surgery and other changes (Tr. 26).

Lastly, the record is replete with documentation supporting Plaintiff's allegations of pain. Plaintiff's physicians have treated her pain with strong prescription pain medication and epidural injections. The ALJ acknowledged that Plaintiff experienced some degree of pain, although he concluded that it was not disabling (Tr. 51). In addressing whether pain should be considered as a non-exertional limitation, the Sixth Circuit has stated that an ALJ is "not precluded from using the Guidelines unless the alleged pain is severe enough to restrict a full range of work at a particular exertional level." *Carreon*, 51 F. App'x at 575-76. While the Court finds that Plaintiff's pain alone

may not have been severe enough to restrict a full range of work, we nevertheless conclude that Plaintiff's pain in combination with her weakness, numbness and limited range of motion were severe enough to apprise the ALJ that Brewer may not have been able to perform the full range of sedentary work. In turn, the presence of these non-exertional impairments should have alerted the ALJ that vocational expert testimony would be required in order to determine whether Plaintiff could perform sedentary work that existed in significant numbers in the national economy.

It is important to note that on review this Court must accord great deference to the ALJ's credibility determinations. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). This deference standard is appropriate because the ALJ had the opportunity to observe Plaintiff's demeanor while testifying. *Id. citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). However, the ALJ's determination must be supported by the record. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

In the case *sub judice*, the ALJ briefly mentioned some of the non-exertional impairments alleged by Plaintiff while discussing her RFC, but determined that they were not severe impairments (Tr. 47, 50-51). In explaining his decision, the ALJ relied significantly upon the findings of one-time examining consultative physician, Dr. Richard Watkins, and non-examining state agency physician, Dr. Leigh Thomas, who each opined that Plaintiff was capable of performing light work (Tr. 290-95, 298-305). ALJ Atkins justified his reliance upon these opinions partly because, based on his review of the record, neither opinion had been contradicted by a "competent well supported assessment from a treating or other examining source" (Tr. 51).

The Court finds that the ALJ's ruling in this regard was flawed for several reasons. To begin, both doctors completed their assessments of Brewer in January of 2007, prior to her cervical

9

fusion procedure. While the ALJ asserted that there was no competent medical evidence to contradict these physicians' opinions, the mere fact that Plaintiff's neck impairment required surgery after these doctors rendered their opinions undermines their findings and indicates that her condition was severe. Moreover, there is medical opinion evidence in the record which contradicts the physicians' opinions. For example, both Drs. Watkins and Thomas opined that Plaintiff had a full range of motion in her cervical spine (Tr. 290, 299). Yet, after surgery, records from the Crystal Clinic and Dr. Basali depict that Plaintiff had a limited range of motion in both her cervical and lumbar spine (Tr. 323, 358). ALJ Atkins offered no explanation of why he rejected the medical opinions offered by the doctors at the Crystal Clinic or Dr. Basali.[2] This is particularly troublesome considering that Dr. Thomas never physically examined Plaintiff and Plaintiff only presented to Dr. Watkins on one occasion, whereas Plaintiff was seen at the Crystal Clinic and by Dr. Basali on multiple visits (Tr. 322-45, 357-60). *See Wesley v. Comm'r of Soc. Sec.*, 205 F.3d 1343 (6th Cir. 2000) (Table) (opinions of physicians who examined claimant on only one occasion are not entitled to any special degree of deference). An ALJ is required to assess all medical opinion evidence in the record. 20 C.F.R. § 416.927(d). The ALJ's failure to address these and other medical opinions in the record leaves the Court to guess whether the ALJ overlooked these opinions, or intentionally discredited them. Under these circumstances, the Court rules that the ALJ's credibility finding was not supported by the substantial evidence in the record.

The Court also rejects Defendant's argument defending the ALJ's choice to rely upon the opinions of Drs. Watson and Thomas. Defendant maintains that the medical opinions offered by Drs. Watson and Thomas were still reliable despite the fact that Plaintiff underwent surgery after

---

[2]Dr. Basali is a physician at the Pain Management Institute at Wooster Community Hospital (Tr. 357-59).

they rendered their opinions because Plaintiff's condition after surgery was substantially similar to her condition prior to surgery. In support of its argument, Defendant alleges that Plaintiff's treatment post surgery was conservative and that Dr. Tai-Chi Kwok noted that Brewer's neck was supple and that her back was non tender. Defendant's characterization of Plaintiff's treatment as conservative is somewhat misleading. After Brewer's surgery, she continued to take strong narcotic pain medication, participated in physical therapy, entered a pain management program, and received a series of pain injections to control her symptoms. Additionally, the notes Defendant cites referring to Dr. Kwok do not tell the whole picture. Plaintiff originally presented to Dr. Kwok on November 21, 2008, complaining of problems with breathing, chest pains, and burning in her shoulder blades (Tr. 366). On her next visit to him, November 25, 2008, she again complained of a bad cough, and symptoms associated with her diagnosis of Chronic Obstructive Pulmonary Disease ("COPD") (Tr. 364). Although Dr. Kwok noted that Plaintiff's neck was supple and that her back was non-tender during a subsequent visit, his notes also consistently reflected that Brewer's neck pain and low back pain were two of her active problems (Tr. 362, 364, 367). Such evidence dissuades the Court from concluding that Plaintiff's condition was substantially the same before and after surgery. Consequently, it also weakens the ALJ's reliance upon the opinions offered by Drs. Watson and Thomas in finding that Plaintiff was not disabled.

As previously addressed in the Court's opinion, while a claimant's pain, weakness, numbness and limited range of motion, in isolation, may not ordinarily be of such a severity as to obviate the ALJ's use of the Guidelines, in combination with other non-exertional limitations, courts have found that consideration of these impairments precludes the use of the Guidelines. *See Trivett v. Bowen, 850 F.2d 690 (4th Cir. 1988) (Table)* (numbness, swelling, neuropathy and other non-exertional

11

conditions necessitated the ALJ's use of a vocational expert); *see also Najera v. Sullivan*, 902 F.2d 12 (8th Cir. 1990) (vocational exert testimony required to consider claimant's numbness in hands and side effects of medication); *see also Suarez v. Comm'r of Soc. Sec.*, No. 06 Civ. 2868, 2009 WL 874041 (S.D.N.Y. March 26, 2009) (chronic shoulder pain and restricted range of motion warranted vocational expert testimony).  Although sedentary work only involves occasional lifting and carrying of objects weighing less than ten pounds, and the ability to manipulate objects, Brewer's non-exertional impairments could likely restrict her from performing a range of sedentary work given the extensive symptoms she suffers.  As a consequence, the Court finds that it was improper for the ALJ to rely solely on the Guidelines in determining that Plaintiff could perform work that existed in significant numbers in the national economy. "[W]hen a claimant does not precisely fit the grid's mold, the grid is inapplicable and the applicant is entitled to further individualized determination of the availability of work." *Kirk, supra*, 667 F.2d at 540, FN 8.  The ALJ should have utilized the opinion of a vocational expert in making this determination.

### B.  Whether the ALJ Properly Analyzed Plaintiff's Complaints of Disabling Pain

In light of the fact that the Court has determined that remand is warranted on other grounds, it is futile for the Court to conduct a lengthy discussion of whether the ALJ's analysis of Plaintiff's pain was proper.  However, because the Court has ruled that the ALJ did not properly evaluate all of the medical opinion evidence in the record, it instructs the ALJ to reevaluate this evidence, determining what credit, if any, each opinion deserves.  A further review of the medical evidence will undoubtedly require the ALJ to also re-assess whether Plaintiff's pain and other symptoms are disabling.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge **REVERSES** and **REMANDS** the decision of the Commissioner to the Social Security Administration for further proceedings not inconsistent with this opinion.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: April 1, 2011.